Owen, C. J.
If the plaintiff below was not entitled to the relief sought, it was for the reason that the title he was seek *86 ing to quiet, came to Lillian E. Holbrook by deed of gift from Thomas H. Lamson.
The one fact which stands stubbornly in the way of this conclusion, is that the title did not come to her by deed of gift from Thomas H. Lamson. This fact not only stands at the threshold of our investigation, but confronts us at every step we take in it.
Section 4158 of the Revised Statutes, provides that: “ When a person dies intestate, having title or right to any real estate- or inheritance in this state, which title came to such intestate by * * * deecl of gift from an ancestor, such estate shall * * * if there are no children * * * pass to and vest in the husband or wife, relict of such intestate, during his or her natural life.” It is very clear that there is nothing in the recitals of the deed under which both parties claim title, to justify the claim upon which the judgment below is predicated. To establish that claim, it became necessary to invoke the aid of facts outside of the deed itself, which gave to the transaction which led to it, the legal effect of a deed of gift from Lamson to Lillian. These facts are stated in the second supposed defense of the answer, to which the demui’rer of the plaintiff below was interposed, and which the court below overruled. This action of the court is assigned for error; and is the one question to which we address our consideration.
The defendant in error maintains, through his counsel, that: “ The plain intention of the statute is that the real property received from an ancestor, either by inheritance, by will, or by conveyance during life, without having paid valuable consideration therefor, should, in the absence of lineal descendants, return to the channel from whence it came.” If this proposition be conceded to be sound, we are still far from the solution which would justify the judgment below.
By that judgment the property does not “return to the channel from whence it came.” It “ came ” from Sked, the grantor. The negotiations for the purchase were conducted on the part of Lamson, certainly for the benefit of Lillian, and with the single view of making her a wedding gift. The deed was made direct to her, and although the answer states that it *87 was retained by Lamson until tbe nigbt of tbe marriage, it had theretofore been by him placed on record, in tbe records of Cuyahoga county. Tbis was a delivery to Lillian. True, while tbe answer states that on tbe marriage nigbt “ Lamson delivered said deed to bis said daughter Lillian as a wedding gift, thus vesting in her tbe equitable title to tbe property,” it also avers that tbe legal title bad already been conveyed to her by Sked in pursuance of tbe express instructions and directions of Lamson. It is not easy to see bow or when tbe legal and equitable title were ever severed. It was not contemplated at any time that Lamson should bold tbe equitable title. The only logical conclusion from tbe facts stated in tbis answer is, that when tbe legal and equitable title to tbis land passed from Sked it became vested in Lillian. At no time did Lam-son contemplate that be should retain any beneficial or equitable interest in it. Tbe delivery of tbe deed for record raised tbe presumption of its delivery to Lillian, and there is nothing to rebut tbis presumption. Mitchell v. Ryan, 3 Ohio St. 377; Black v. Hoyt, 33 Ohio St. 203; Hammell v. Hammell, 19 Ohio, 17. Tbe averred delivery to Lamson by Sked is explained by other averments, which show that tbe possession was for tbe purpose of improving tbe property for tbe benefit of Lillian, who was tbe only person then entitled to tbe possession. We feel justified, therefore, in concluding that there was no time during tbe transactions detailed in tbe answer when tbe legal and equitable title to tbis property were severed. No contingency was contemplated by Lamson, nor, so far as tbe facts appear, by Sked, in which tbe former was to be or become beneficially interested in this property. From first to last Lillian was the proposed beneficiary of tbe purchase, which was to be enjoyed by her and her future husband. Tbe controversy which chiefly engages tbe discussion in tbis case, arises from tbe necessity of showing facts outside of tbis deed which are expected to impart to it tbe essential qualities of 'a deed of gift from Lamson to Lillian. Counsel are practically in accord that oral evidence is not admissible to contradict tbe material recitals of tbe deed for tbe purpose of fixing its character as a deed of gift from an ancestor. The defendants in error main *88 tain that: “ The recital in said deed which we seek to contradict, is not of the character which the law forbids contradiction of; and it is not necessary for us to contradict any recital in said deed.” The claim is that the recital, “ In consideration of $6,000, received to our full satisfaction of Lillian E. I-Iolbrook,” is not contradicted by showing that the consideration paid was the money of Lamson. That the deed is silent upon this fact. The right to show, by oral evidence, that the consideration was in fact furnished by another than the grantee named in the deed, is predicated upon the legal proposition that recitals in a deed are estoppels only when they are of the essence of the contract; that is, where, unless the facts recited exist, the contract, it will be presumed, would not have been made; and upon the assumed fact that neither party to this deed intended to determine the course of descent the property should follow; that they were not negotiating with a view to any such contingency. In this connection counsel assert that: “ The idea that any recital contained therein would thereafter determine the line of descent, never entered their heads, except so far as the transfer of title from one to the other would control the same,” etc.
In this we are left entirely to conjecture. How may we know that this form of transfer of the title to Lillian was not deliberately adopted by the alleged ancestor, Lamson ? That he looked with approval upon the union which he was about to assist in celebrating by a munificent wedding gift, which the future husband of his child was destined to enjoy in common with her, is abundantly attested by the gift itself. How can we know that he did not adopt this method of transfer as a form of marriage settlement, or as a form of transfer which should inure to the benefit of both parties to the marriage by conferring such a title as, in case of - the death of his child, would leave the surviving husband in the enjoyment of a-marketable fee-simple estate? "While we are left entirely to conjecture, it seems most reasonable that we should rest our conclusion upon the natural and legal hypothesis that the parties at least intended to do what they did, and to do it as they did. It seems to us rather a free construction of this deed to *89 assume that it is silent upon the the question of who furnished the consideration named in it. But one inference can be gathered from it, and that is that Lillian was the purchaser of the property, and paid the named consideration for it. It is this recital which, more than any other in the deed, imparts to it the character of a deed of purchase, as distinguished from a deed of gift from one whose name nowhere appears in it. Here is a deed which, upon its face, justifies but one construction ; that it is a deed of purchase from Shed to Lillian E. Holbrook. To say that it is not contradicting its recitals to to prove that in fact it is a deed of gift from one who is not named in it to the grantee, is a theory which we are not prepared to adopt. That the' consideration clause of the deed may not, in any case, be contradicted, we are not called upon to declare. In many cases — -in fact in most cases — the consideration recitals in a deed have little or nothing to do with the effect of a deed, or with the title conveyed. But in the case at bar, how can it be said that these recitals have no relation to the effect of the deed, or the nature of the title conveyed ? While it may be said that the quality of real estate as ancestral or non-ancestral property, is never inherent in the estate itself, it does not follow that the character of a deed, as a deed of purchase or a deed of gift, has no relation to the quality of the estate as ancestral property or otherwise. The character of the deed as a deed of purchase or a deed of gift was determined at the time it was made and delivered. How can it be said that the form of the deed, as respects its recitals of consideration, can have no effect upon the kind of estate it conveyed, when the one questioh which has so long protracted the contention in this ease, is whether the deed was a deed of gift or of purchase ? ‘
Our conclusion, upon this question is, that in determining whether an instrument for the conveyance of land is a deed of purchase or a deed of gift, we may look to its recitals, and that a recital in such a deed that the conveyance by the named grantor to the grantee is made in consideration of a named sum of money received by such grantor from the grantee, is of the essence of the deed, and so far concerns its operation and *90 effect as that it is not competent to show, by parol proof, that in fact such deed was a deed of gift from a person not named in the deed, and that the named consideration was in fact paid by him.
II. In determining whether real estate is ancestral or otherwise, the course of descent is to be controlled by the legal title. In Shepard v. Taylor, (R. I.) 3 Atlantic Rep. 382, it was held: “ When a legal estate in reality and an equitable one, coming through different persons, unite in the same holder, the course of the legal estate, and not that of the equitable, determines whether the holder of both does or does not have an ancestral estate.”
This view is sustained by Chancellor Kent in Nicholson v. Halsey, 1 Johns. Chan. 416. Also by Goodright v. Wells, Douglass, 771; Selby v. Alston, 3 Ves. Jr. 338. As we have already seen, the legal title to the real estate in controversy was never vested in Lamson. We have also seen, that when the legal title became vested in Lillian there remained no equitable interest in any other person. The transaction was as if Lamson had made a gift of $6,000 to Lillian, and with it she had made this purchase. So far as the conduct and intention of Lamson appear by this answer, the legal and equitable title passed immediately and at the same time from Shed to Lillian, and however we may characterize the transaction as between Lamson and the other parties to it, it certainly was not a conveyance of real estate by deed of gift from him to Lillian.
III. The only estate that Lamson parted with was six thousand dollars in money. The doctrine of equitable conversion finds no place for its exercise in the case at bar. It is peculiarly an equitable doctrine. While it may be invoked, in a proper case, in fixing the title in the person entitled thereto under the immediate operation of a deed, it is never employed in determining the course of descent where the title is so fixed. In such case, the course of descent is to be determined by rules of law. In the case at bar, there is no controversy concerning Lillian’s title. By the concession of all parties she was vested with a fee-simple estate in the lands in controversy. This *91 being so, the law can alone determine the course of descent. Our statutes of descent and distribution are not to be construed or administered by the rules of equity. Foster’s Appeal, 74 Pa. St. 391, 898-9; Armington v. Armington, 28 Ind. 74, 76.
IV. We are not left without the light of adjudication, however, upon the questions involved in this controversy.
In Brower v. Hunt, 18 Ohio St. 311, it was held:
“The title to real estate which must have come to an intestate by devise, or deed of gift from an ancestor, to constitute ancestral property, is the title under which the intestate immediately held.”
And, “ Where specific tracts of land had been allotted to codevisees in pursuance of directions in the will of their ancestor, and, afterwards, one conveyed his tract to a co-devisee for a monied consideration as expressed in the deed, but in fact for a like conveyance, by the latter, of the tract he had received in the partition; held, that the title of neither was derived directly by devise from the ancestor, and that, for the purposes of descent, each was to be regarded as a purchaser.”
Upon this branch of the case, White, J., says, in the opinion:
“The remaiáing question is as to whether the lands described in the first cause of action, came to Thomas Hunt by devise from his father. In our opinion they did not. The •title mentioned in the statute is the title under which the intestate immediately holds. The title to these lands came to Thomas by deed of conveyance from Jacob, and the character of the consideration cannot alter the fact, and make that a title by devise from the ancestor which was in fact- a title 'by deed from Jacob. There was no mistake in the partition which the deeds between Jacob and Thomas were merely designed to correct. Without the conveyance from Jacob, Thomas had no title to these specific lands, legal or equitable; yet the operation of the will was the same without the deed as with it. The title of Thomas, therefore, cannot be said to have come to Tiim directly by devise from his father; and for the purposes of descent he must be regarded as a purchaser.”
*92 There are weightier considerations pointing to the ancestral character of the property involved in. the case last cited than in the case at bar. The lands conveyed to Thomas came from the ancestor. The consideration for the conveyance came from the ancestor and came in land. No money consideration — no lands except ancestral lands — -intervened to affect the question.
All that could be said was that the title of Thomas did not technically come to him “ directly/’ by devise from an ancestor. The case holds that the character of the consideration cannot affect the estate as ancestral or non-ancestral property.
The logic of this case solves the case at bar. Lamson, the alleged ancestor, did not, it is conceded, directly deed these lands to Lillian. And, whatever right or equity he may have had in them as between himself and Sked after the negotiations for the purchase, and before the deed was executed, as between himself and Lillian he did not even indirectly convey the land; for he neither held nor claimed any interest, legal or equitable, asagainst her; and whatever rights the defendants assert, they claim through her.
It follows, therefore, that with or without the aid of proof of facts different from those recited in the deed, the defendants are not able to establish the one fact indispensable to their defense, that the property in question came to Lillian by deed of gift from an ancestor.
The facts alleged in the answer failed to constitute a defense, and the demurrer was well taken.
There was error in overruling it.
The views already expressed relieve us of the consideration of the questions arising upon the relation of Lillian to Lamson as his adopted child.

Judgment reversed.